FILED

14 FEB 26 PM 3:30

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DS                                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK V. RECTOR,<br><br>                             Plaintiff,<br><br>              v.<br><br>CAROLYN W. COLVIN,<br><br>                             Defendant. | Civil No.     13-cv-00168-BEN (BGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 12, 15]** |

## I. INTRODUCTION

On January 22, 2013, Mark V. Rector ("Plaintiff") filed a complaint pursuant to the Social Security Act ("Act"), 42 U.S.C. section 405(g), challenging the Commissioner of the Social Security Administration's ("Defendant") denial of disability benefits. (Doc. No. 1.) On April 2, 2013, the Defendant filed an answer. (Doc. No. 8.) On June 3, 2013, Plaintiff filed a motion for summary judgment, requesting reversal of the Administrative Law Judge's ("ALJ") final decision. (Doc. No. 12.) Plaintiff seeks reversal on the basis that the ALJ: (1) failed to properly consider the opinion of examining psychologist, Dr. Valette; (2) erred in rejecting the opinion of the treating internist, Dr. Tarantino; and (3) erred in finding Plaintiff's subjective complaints not credible. (Doc. No. 12.) On July 17, 2013, Defendant filed a cross motion for summary judgment (Doc. No. 15) and a response in opposition to Plaintiff's motion (Doc. No. 16). On July 31, 2013, Plaintiff filed a response to Defendant's

cross motion for summary judgement. (Doc. No. 17.) For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

On April 9, 2009, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging the onset of disability on March 31, 2008. (Administrative Record ("Ar.") 135-37; Ar. 21.) The Social Security Administration denied Plaintiff's application on initial review and again on reconsideration. (Ar. 59, 63.) On May 16, 2011, ALJ Larry B. Parker held a hearing to determine Plaintiff's disability status. (Ar. 21.) The ALJ found Plaintiff can perform a reduced range of exertionally medium work, including unskilled, medium jobs such as laundry worker and packer. (Ar. 22, 28.) For this reason, among others, the ALJ found Plaintiff not disabled. (*Id.*) Plaintiff filed an appeal with the Social Security Appeals Council requesting review of the ALJ's unfavorable decision. (Ar. 228.) The appeals council declined to review the ALJ's decision and the denial became the final decision of the Social Security Commissioner. (Ar. 2.) On January 22, 2013 Plaintiff filed the complaint at issue, effectively appealing the Commissioner's final decision. (Doc. No. 1.)

### A.    Relevant Medical Evidence

At the hearing, the ALJ considered the records of (1) treating internist, Dr. Tarantino; (2) state agency examining psychologist, Dr. Valette; (3) state agency examining internist, Dr. Nguyen; (4) state agency examining psychiatrist, Dr. Nicholson; (5) state agency examining internist, Dr. Dao; (6) non-examining state agency review physician, Dr. Ross; and (7) medical records from Grossmont Hospital. At the hearing, medical expert Dr. Klein reviewed Plaintiff's medical records and testified. (Ar. 36.) Ms. Katsell, a vocational expert, also reviewed Plaintiff's records and testified. (*Id.*)

#### i.    Dr. Tarantino

Dr. Tarantino is Plaintiff's treating physician and has the strongest opinion in favor of Plaintiff receiving disability benefits. In a letter dated March 3, 2010, Dr. Tarantino

affirmed Plaintiff's diagnoses of hepatitis C, compromised liver function, depression, hypertension and diabetes. (Ar. 565.) In the same letter, Dr. Tarantino concludes that due to these ailments, Plaintiff is unable to work and will never be able to return to work. (*Id.*) Dr. Tarantino completed a Multiple Impairment Questionnaire ("MIQ") regarding Plaintiff's capabilities. (Ar. 577.) Dr. Tarantino opined that the severity of Plaintiff's pain is a two or three out of ten, that Plaintiff can sit for eight hours, stand or walk for three hours and lift and carry up to ten pounds occasionally. (Ar. 579-81.) On the MIQ, Dr. Tarantino concluded Plaintiff's symptoms frequently interfere with his concentration and attention. (Ar. 582.) Dr. Tarantino also concluded Plaintiff's depression affects his ability to function, but Plaintiff can still tolerate a low stress work environment. (*Id.*)

### ii.   Dr. Valette

On September 18, 2008, psychologist, Dr. Valette, examined Plaintiff on behalf of the state regarding Plaintiff's disability claims. (Ar. 269-68.)  Dr. Valette noted Plaintiff's medical history of diabetes, hepatitis C, and liver damage. (Ar. 269.) Dr. Valette also noted Plaintiff's psychiatric history including Plaintiff's six day, involuntary hospitalization for an insulin overdose. (*Id.*) Upon examination, Dr. Valette found Plaintiff moderately limited in his ability to interact with others, moderately limited in his ability to sustain a routine without supervision, moderately limited in his ability to complete simple tasks, moderately limited in his ability to concentrate for two hours at a time and markedly limited in his ability to complete detailed and complex tasks. (Ar. 270.) Dr. Valette also found Plaintiff capable of washing dishes, vacuuming, doing laundry, driving, handling his own finances, and painting on canvas as a hobby. (*Id.*) Dr. Valette ultimately diagnosed Plaintiff with a mood disorder due to Plaintiff's general depressive condition. (*Id.*)

### iii.   Dr. Nguyen

On September 20, 2008, internist Dr. Nguyen, examined Plaintiff on behalf of the state. (Ar. 272.) Dr. Nguyen noted Plaintiff's self-reported medical history and conducted a physical evaluation. (Ar. 272-76.)  Dr. Nguyen concluded that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; Plaintiff is not restricted in his

ability to stand or walk, Plaintiff has no sitting limitations, and Plaintiff has no limitation in bending, crawling, kneeling, or stooping. (Ar. 276.)

### iv.   Dr. Nicholson

On January 25, 2010, psychiatrist, Dr. Nicholson, examined Plaintiff on behalf of the state. (Ar. 372.) Dr. Nicholson reviewed the reports of Dr. Valette and Dr. Nguyen. (*Id.*) Plaintiff self-reported that he suffers from depression caused by his hepatitis C symptoms. (*Id.*) After examining Plaintiff, Dr. Nicholson concluded Plaintiff is able to understand, remember and carry out simple one or two-step job instructions. (Ar. 377.) Dr. Nicholson also concluded Plaintiff is only mildly limited in his ability to interact with co-workers and the public, mildly limited in his ability to concentrate and pay attention, moderately limited in his ability to maintain day-to-day work activity, including attendance and safety, and not limited in his ability to perform work activities without special or additional supervision. (*Id.*)

### v.   Dr. Dao

On January 25, 2010, internist, Dr. Dao, examined Plaintiff on behalf of the state. (Ar. 379.) After conducting a series of physical evaluations, Dr. Dao concluded Plaintiff has no physical functional limitations stemming from his medical conditions. (Ar. 384.) Dr. Dao also noted that Plaintiff's blood pressure is only elevated because Plaintiff has not been taking his blood pressure medication. (*Id.*)

### vi.   Dr. Ross

On February 10, 2010, reviewing physician, Dr. Ross assessed Plaintiff's residual functional capacity ("RFC")[1] based on Plaintiff's medical records. (Ar. 415-20.) Dr. Ross found Plaintiff limited to exertionally medium work. (*Id.*) Specifically, Dr. Ross concluded Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for a total of six hours of an eight hour work day, and sit for a total of six hours of an eight hour work day. (Ar. 416.) Dr. Ross also found Plaintiff could frequently crawl, crouch

---

[1]A plaintiff's residual functioning capacity, or RFC, is defined as "the most [a plaintiff] can do despite [his or her] limitations." *See* 20 C.F.R. § 404.1545(a)(1).

1 and kneel, and occasionally climb. (Ar. 417.)

2       **vii.   Grossmont Hospital Records**

3       Grossmont Hospital has admitted Plaintiff numerous times. On April 18, 2008,
4 Plaintiff was admitted to the psychiatric unit of Grossmont Hospital after writing a suicide
5 note and overdosing on insulin. (Ar. 243.) After overdosing, Plaintiff panicked and called
6 his wife; Plaintiff's wife subsequently called 911. (*Id.*) Plaintiff was kept on watch in the
7 hospital for six days because of the pre-meditative nature of the suicide note. (*Id.*)

8       On February 12, 2009, Plaintiff became combative and confused while at a bank. (Ar.
9 464.) The bank teller called 911 and an ambulance brought Plaintiff to the hospital. (*Id.*) The
10 treating physician determined Plaintiff's high blood pressure and elevated blood sugar levels
11 caused the episode. (*Id.*) Plaintiff's blood pressure and blood sugar levels slowly improved
12 while under the hospital's care but he was advised to stay in the hospital another day until
13 his levels returned to normal. (*Id.*) Plaintiff, however, left the hospital against medical
14 advice and without informing anyone or signing any papers. (Ar. 465.) Because Plaintiff left
15 the hospital without informing anyone, he did not receive any prescriptions nor were his
16 medications able to be reconciled. (*Id.*)

17       On August 7, 2010, Plaintiff was again brought to the emergency room. (Ar. 543.)
18 Plaintiff did not take his depression medication that day and voiced thoughts of killing
19 himself to his wife. (*Id.*) Plaintiff also had not taken his insulin, claiming he forgot because
20 he was so depressed. (Ar. 534.) While in the hospital, Plaintiff adamantly refused an IV line
21 and repeated that he wanted to go home. (*Id.*) The hospital cleared and discharged Plaintiff
22 the next day. (*Id.*)

23       On March 6, 2011, Plaintiff was again admitted to the hospital with extremely low
24 blood sugar levels. (Ar. 588.) While at home, Plaintiff became dizzy and on the verge of
25 losing consciousness. (*Id.*) His wife called the paramedics who found Plaintiff's blood sugar
26 levels dangerously low. (*Id.*) Plaintiff, however, refused to go to the hospital. (*Id.*) A short
27 time later, the paramedics were called again because Plaintiff's symptoms returned. (*Id.*)
28 This time Plaintiff was taken to the hospital. Hospital personnel found that in addition to

confusing and incorrectly administering his insulin, Plaintiff also had not taken his blood pressure medication. (Ar. 589.) At the hospital Plaintiff was given an extensive diabetic education so he could avoid low blood sugar attacks in the future. (*Id.*)

On March 25, 2011, Plaintiff returned to the emergency room because he noticed his blood sugar levels dropping dangerously low. (Ar. 599.) Plaintiff called the paramedics who brought him to the ER for an evaluation. (*Id.*) At the hospital, Plaintiff could not remember what type of insulin he took before dinner. (*Id.*) Plaintiff's blood sugar levels were stabilized at the hospital and he was discharged the following day. (*Id.*)

**B.    Hearing Testimony**

The Administrative Law Judge held a hearing to determine whether Plaintiff qualified for disability benefits. (Ar. 35.) Plaintiff attended this hearing. (Ar. 36.) The government's medical expert, Dr. Klein, and a vocational expert, Ms. Katsell, reviewed Plaintiff's records and testified at the hearing. (*Id.*)

**i.    Dr. Klein—Testifying Medical Expert**

The government called Dr. Klein to testify as a medical expert at Plaintiff's disability hearing. (Ar. 41.) Dr. Klein reviewed Plaintiff's medical history, finding Plaintiff suffers from diabetes, hypertension, and hepatitis C. (Ar. 42.) Dr. Klein concluded that each of these ailments are controllable and found that none of these impairments meet or equal the criteria of a listing[2]. (*Id.*) Dr. Klein also concluded that Plaintiff retains the capacity to perform exertionally medium work, including sitting, standing, or walking for six of eight hours, and lifting twenty-five to fifty pounds. (*Id.*) Dr. Klein, however, found Plaintiff should not climb ladders or be exposed to heights or heavy machinery. (Ar. 43.)

**ii.    Ms. Katsell—Testifying Vocation Expert**

The government called Ms. Katsell to testify as a vocational expert regarding Plaintiff's ability to work. (Ar. 45.) Ms. Katsell concluded that someone with Plaintiff's medical and mental conditions would not be able to perform Plaintiff's past work. (Ar. 48-

---

[2]A "listing" refers to the pre-determined list of ailments that qualify for Social Security benefits.

49.) Ms. Katsell, however, found that Plaintiff, with his current limitations, could engage in other forms of employment, such as a laundry worker. (Ar. 47.)

### III. STANDARD OF REVIEW

To qualify for disability benefits under the Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A), (2)(A).

### A.   Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently engaging in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work he has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. If so, the claimant is not disabled. 20 C.F.R. § 404.1520 & 404. 1509; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir.1999). The claimant bears the initial burden of proving disability in steps one through four of the analysis. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.2005) (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). If a claimant establishes an inability to carry on past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. (*Id.*)

///

7

**B.    Judicial Review**

A claimant may seek judicial review of an unfavorable decision of the Commissioner, though the district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 (9th Cir. 1975). Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The district court may enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## IV. DISCUSSION

The ALJ properly found that Plaintiff is able to perform other gainful work and does not qualify for disability at this time. Upon review, the Court finds neither legal error nor a failure of the ALJ to support his denial of benefits with substantial evidence.

**A.    The ALJ's Findings**

On June 22, 2011, the ALJ issued his decision denying Plaintiff social security benefits. (Ar. 29.) In arriving at his decision, the ALJ evaluated Plaintiff using the five-step sequential evaluation process set forth in the Commissioner's regulations, 20 C.F.R. section 416.920(a) ("Regulation"), described above.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 31, 2008, the alleged onset date. (Ar. 23.)  Plaintiff did have earnings of $3,991.33 in 2009, but the ALJ found this work activity did not rise to the level of substantial gainful activity. (*Id.*)

1    At step two, the ALJ found Plaintiff's physical impairments qualify as "severe" under
2  the Regulation. (*Id.*) Plaintiff's physical impairments include a longitudinal, 27-year history
3  of diabetes 1, hepatitis C, and hypertension. (*Id.*) The ALJ found that Plaintiff's physical
4  impairments have lasted more than twelve months and cause more than a slight limitation
5  on Plaintiff's ability to do basic work activities. (*Id.*) The ALJ, however, found the evidence
6  in the record insufficient to establish the existence of a mental impairment that would
7  impose more than a slight limitation on Plaintiff's ability to perform basic work activity.
8  (*Id.*) The ALJ stated he gave Plaintiff the "benefit of the doubt in finding a mental residual
9  functional capacity for unskilled work activity," as opposed to finding Plaintiff had the
10 mental capacity to perform skilled work activity. (*Id.*)

11    At step three, the ALJ found Plaintiff does not have an impairment or combination
12 of impairments that meets or medically equals one of the listed impairments in 20 C.F.R.
13 Part 404, Subpart P, Appendix 1. (Ar. 24.) In support of this finding, the ALJ noted that no
14 treating or examining physician indicated findings that would satisfy the severity
15 requirements for any listed impairment. (*Id.*)

16    The fourth and fifth steps require the ALJ to determine how the claimant's
17 impairments affect the claimant's ability to perform work. To make this determination, the
18 ALJ formulates the claimant's residual functional capacity or "RFC." An RFC "is the most
19 [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An
20 RFC "is used at step four of the sequential evaluation process to determine whether the
21 individual is able to do past relevant work, and at step five to determine whether an
22 individual is able to do other work, considering his or her age, education, and work
23 experience." Social Security Ruling ("SSR") 96-8p.

24    At step four, the ALJ found that Plaintiff is unable to perform in his field of past
25 employment. (Ar. 28.) The ALJ supported this finding with the testimony of vocational
26 expert, Ms. Katsell. (*Id.*) Ms. Katsell testified that Plaintiff's past work as a painter is a
27 skilled, medium level work activity. (*Id.*) Plaintiff, however, only has the current RFC for
28 unskilled, medium level work activity. (*Id.*) Accordingly, the ALJ concluded, Plaintiff is

1  unable to perform his past relevant work. (*Id.*)

2    At step five, after careful consideration of the whole record, the ALJ concluded that
3  Plaintiff is able and has the RFC necessary to perform unskilled, medium work. (Ar. 24.)
4  Specifically, the ALJ found Plaintiff can lift and carry fifty pounds occasionally, twenty-five
5  pounds occasionally, sit for six hours in an eight hour work day and stand/walk for six hours
6  in an eight hour work day. The ALJ, however, found that Plaintiff does have postural
7  limitations and cannot climb ladders, work with heavy machinery or deal with heights.
8  Accordingly, Plaintiff is limited to simple, repetitive tasks involving unskilled work activity
9  with limited interaction with others. (*Id.*) While Plaintiff cannot perform his past work,
10 Plaintiff is capable of engaging in other gainful work activity.

11 **B.    The ALJ Properly Considered Examining Psychologist Dr. Valette's Opinion**
12 **and Reasonably Concluded that Plaintiff Could Still Perform Simple and**
13 **Repetitive Tasks**

14    Plaintiff argues that the ALJ erred in failing to consider Dr. Valette's opinion that
15 Plaintiff is "moderately" limited in his ability to socially interact with others, sustain an
16 ordinary routine without sustained supervision and complete simple tasks. (Doc. No. 12.)
17 Plaintiff contends that the ALJ's construction of his RFC as limited to "simple and
18 repetitive" tasks is incorrect for failing to include Dr. Valette's opinions regarding
19 Plaintiff's moderate limitations. (*Id.*) It is the ALJ, however, who is responsible for making
20 factual findings and translating medical source statements into an RFC. 20 C.F.R.
21 § 404.1546(c).

22    In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008), the Ninth
23 Circuit upheld an ALJ's determination that a Plaintiff with "moderate" limitations could still
24 perform "simple and repetitive" tasks. Here, the ALJ similarly determined that Plaintiff's
25 various "moderate" limitations did not totally preclude him from "simple and repetitive"
26 tasks. (Ar. 24.) Accordingly, the ALJ accurately incorporated Dr. Valette's opinion of
27 Plaintiff's moderate limitations in social interaction, sustaining a routine, and completing
28 simple tasks into the RFC construction.

The ALJ did not reject the "moderate" limitations stated by Dr. Valette. Rather, he found Plaintiff able to perform some simple tasks despite these limitations. This is an accurate and reasonable interpretation of Dr. Valette's medical source statement and is supported by the record. Accordingly, the ALJ properly considered all of Dr. Valette's opinions.

**C.     The ALJ Provided Adequate Reasons for Rejecting the Opinion of Dr. Tarantino**

Plaintiff argues the ALJ did not give "specific and legitimate" reasons for discounting the opinions of Plaintiff's treating physician, Dr. Tarantino. (Doc No. 12.) Plaintiff agrees that the ALJ did provide some reasons for discounting Dr. Tarantino's opinion, but contests the sufficiency of those reasons. (*Id.*) Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a non-treating physician contradicts the opinion of the treating physician, the ALJ may reject the opinion of the treating physician by providing "specific and legitimate" reasons supported by substantial evidence in the record. (*Id.*)

Dr. Tarantino opined that Plaintiff can stand or walk no more than three hours in an eight-hour work day, can never lift or carry more than ten pounds, and would miss more than three days of work per month. (Ar. 579-80.)  Dr. Tarantino therefore concluded Plaintiff is incapable of performing any gainful employment. (Ar. 570.) The ALJ found Dr. Tarantino's conclusory opinion "wholly inconsistent with the evidence of record" (Ar. 27), and supported the rejection of Dr. Tarantino's conclusion with the following findings: (1) Plaintiff controlled his impairments for twenty-seven years and there is no objective evidence on the record that his condition has since worsened (Ar. 26); (2) the record establishes Plaintiff's impairments are well controlled when Plaintiff complies with appropriate treatment methods (Ar. 24, 26); (3) Plaintiff's impairments do not interfere with Plaintiff's ability to dress, bathe, handle bills and cash, go out on his own, drive, wash dishes, vacuum, do laundry, and paint on canvas (Ar. 26); and (4) Dr. Tarantino's opinions are not well supported and are not backed by citations to medical symptoms and laboratory

11

results (Ar. 27). The ALJ also supported his rejection of Dr. Tarantino's conclusion with the opinions of Dr. Dao, Dr. Klein, Dr. Nguyen, and Dr. Nicholson who each concluded Plaintiff has only mild limitations in work capacity. (Ar. 25.)

The ALJ gave sufficient reasons to support his rejection of Dr. Tarantino's assessment and the reasons are supported by substantial evidence in the record. The ALJ's reasons specifically state that Plaintiff can control his impairments and that Plaintiff's impairments do not interfere with his ability to complete normal, everyday tasks. The ALJ further supported his rejection of Dr. Tarantino's opinion with the opinions of four other medical doctors, all who disagree with Dr. Tarantino's assessment. Accordingly, the ALJ did not error by rejecting Dr. Tarantino's opinion. The ALJ is responsible for translating all medical source statements and resolving conflicts in medical testimony to construct the appropriate RFC. Further, the ALJ's conclusion that Plaintiff is able to perform simple, repetitive tasks involving medium unskilled work activity is supported by substantial evidence. (Ar. 24.)

**D.    The ALJ Correctly Found Plaintiff's Subjective Complaints Not Credible**

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms—to the extent those symptoms interfere with Plaintiff's ability to perform gainful employment—not credible. (Ar. 26.) Plaintiff claims the ALJ's finding is based on legal error and unsupported by substantial evidence. (Doc. No. 12.) Although Plaintiff agrees that the ALJ provided reasons for dismissing Plaintiff's subjective complaints, he challenges the sufficiency of those findings. (*Id.*)

In making a subjective pain credibility determination, the ALJ considers a number of factors, including: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (citing Social Security Regulation 88–13). These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude

12

1    the adjudicator rejected the claimant's testimony on permissible grounds and did not

2    arbitrarily discredit a claimant's testimony regarding pain. (*Id*. at 346.)

3         The ALJ properly considered these factors when making his determination and

4    provided reasons supported by the record for his conclusions. Regarding onset and duration,

5    the ALJ found no objective medical evidence to support Plaintiff's claim that his diabetes,

6    which for years allowed Plaintiff to work, has now risen to a disabling level. (Ar. 26.)

7    Regarding treatment, the ALJ found Plaintiff's hypertension primarily controlled and any

8    high readings only noted when Plaintiff failed to comply with his medication regime. (*Id*.)

9    Further, the ALJ found that Plaintiff's multiple hospitalizations were primarily due to

10   noncompliance with treatment and Plaintiff's outright refusal to follow medical

11   professional's advice and recommendations. (Ar. 26-27.) Regarding Plaintiff's daily

12   activities, the ALJ found evidence that Plaintiff can handle bills and cash appropriately,

13   Plaintiff can go out on his own, and Plaintiff has no difficulty bathing, dressing or attending

14   to personal hygiene unassisted. (Ar. 26.) The record also indicates that Plaintiff is able to

15   wash dishes, vacuum, do laundry, drive independently, and paint on canvas. (*Id*.) Plaintiff's

16   subjective complaints are not credible due to the lack of medical evidence substantiating the

17   extent of his complaints, his failure to comply with treatment, and the extent of his daily

18   activities. For these specific reasons, the ALJ appropriately concluded that Plaintiff's

19   subjective allegations of disabling pain and limitations are inconsistent with the evidence

20   in the record and therefore are not fully credible. (Ar. 27.)

21        The ALJ's findings regarding Plaintiff's subjective complaints contain no legal error

22   and are supported by substantial evidence in the record. Accordingly, the ALJ correctly

23   discredited Plaintiff's subjective complaints as to the severity of Plaintiff's pain.

24   ///

25   ///

26   ///

27   ///

28   ///

# V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Cross-Motion for Summary Judgment. The ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED: February 26, 2014

HON. ROGER T. BENITEZ
United States District Judge

14